Reverend P. P. BURT, etc., Plaintiff,

v.

C. Ashley ABEL, etc., et al., Defendants.

Civ. A. No. 72–537.

United States District Court,
D. South Carolina,
Greenwood Division.

Feb. 22, 1979.

Laughlin McDonald, Atlanta, Ga., Herbert E. Buhl, III, Columbia, S. C., for plaintiff.

W. Ray Berry, Columbia, S. C., J. Roy Berry, Johnston, S. C., for defendants.

BLATT, District Judge.

This elastic action, commenced over six (6) years ago under 42 U.S.C. § 1983, has rebounded for a second time from the Fourth Circuit Court of Appeals, and it is again before this court for further proceedings. As in the late stages of a hotly contested athletic event, the party behind on the score board has changed strategy in an attempt to avoid almost certain defeat. A brief history of the convoluted course of this litigation will illuminate the issues now confronting the court.

In May, 1972, Helen Burt filed an action in this court alleging that her termination from a teaching position in Edgefield County was both racially motivated and effected without proper notice, or an opportunity to be heard. This court, after a bench trial, held that Mrs. Burt's discharge was not racially motivated but was properly based on her teaching performance; however, since no hearing had been provided, the court held that Mrs. Burt was entitled, under the damages rule then in effect in the Fourth Circuit, to back pay from the date that she was terminated until the date she actually received such a hearing by the court. *See, Burt v. Board of Trustees of Edgefield County School District,* 521 F.2d

1201 (4th Cir. 1975)—[*Burt I*]. The Court of Appeals, in three separate opinions which remain to this day enigmatic to many who have earnestly studied them, reversed the case and remanded it for clarification as to the classification of relief awarded—(legal or equitable); for determination of the status—(individual or representative)—of the defendants against whom judgment was rendered; and for decision on other related matters. Three weeks after the mandate of *Burt I* was issued, Mrs. Burt died [1] and her husband—(as her administrator)—was substituted as party plaintiff. Thereafter, this court, in the words of the Appeals panel, "diligently followed our instructions on remand," *Burt v. Abel,* 585 F.2d 613, 615 (4th Cir. 1978)—(*Burt II*)—entered judgment for an expanded amount against the defendants in their official capacities, and vacated the earlier award of attorney's fees. On appeal, notwithstanding this court's adherence to the *Burt I* instructions, the Court of Appeals understandably determined that it must "remand this case once again"—(585 F.2d at 615)—due to intervening statutory and decisional law changes. The *Burt II* panel, while not expressly acknowledging that the opinion on the appropriate measure of damages set forth in *Burt I* had been overruled by an intervening Supreme Court decision,[2] followed that Supreme Court decision and reversed the directive of *Burt I* on the damage issue. In addition, the Court of Appeals appropriately reversed that part of *Burt I* which had ordered this court to vacate the award of attorney's fees, basing this change on the intervening enactment of 42 U.S.C. § 1988. The *Burt II* panel remanded the matter to this court for a second time with instructions to allow plaintiff the option of an

opportunity to allege and prove actual injury from the failure to provide his intestate a timely hearing or, in the alternative, to accept an award of "nominal damages not to exceed one dollar." It also held that:

"On remand, plaintiff will therefore be eligible for an award of attorney's fees for services dating from Mrs. Burt's suit against the Board of Trustees (a) if he continues to prevail on the merits, and (b) if the district court determines, in its discretion, that such award is appropriate. The fact that plaintiff may prevail on the merits yet, under *Carey,* recover only nominal damages shall in no way diminish his eligibility for attorney's fees under § 1988, though it is one of the factors properly to be considered on the amount of such award." (585 F.2d at 617–618).

Plaintiff has elected to forego attempted proof of actual injury to Mrs. Burt from the failure to receive a hearing, and he has instead opted to accept one dollar as nominal damages. The main battle yet to be decided concerns attorney's fees, and this is where Mrs. Burt's death, a personal tragedy to her family and friends, assumes great legal importance.

In an obvious effort to prevent plaintiff from becoming the final "prevailing party" in this protracted litigation, thereby exposing themselves to liability for attorney's fees under 42 U.S.C. § 1988, defendants now contend *for the first time* that Mrs. Burt's cause of action, determined by this court and the appellate panels in *Burt I* and *Burt II* to exist only in her interest to procedural due process which entitled her to a hearing before termination, is a "personal right" [3] which did not survive her death

---

1. This fact assumes great importance in the present decision in this matter as hereinafter described.

2. In fact it had; *see, Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 1051 (n. 15), 55 L.Ed.2d 252 (1978). Although the Court of Appeals acknowledged that the Supreme Court had "disapproved our decision in *Horton* " [*v. Orange County Board of Education,* 464 F.2d 536 (4th Cir. 1972)], *see,* 585 F.2d at 615, *Burt I* was disapproved in the same footnote.

3. Of course, the use of the term "personal right" only begins the inquiry, because there are many personal rights which admittedly survive the deceased, (*i. e.,* injury to body). As indicated in this opinion, the proper focus should be whether the particular right is exempted from the general rule of survivability in this state—(§ 15–5–90 (1976))—not whether the right is termed "personal."

shortly after the *Burt I* mandate was issued. Therefore, the defendants urge that this action should now be abated, and that the defendants should be declared the "prevailing party."[4]

The survivability of a § 1983 cause of action must be determined by deciding whether an identical or analogous cause of action would survive under South Carolina law, at least where state law is not "inhospitable to survival of § 1983 actions," *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 1997, 56 L.Ed.2d 554 (1978). However, in instances when "the interests protected by a particular constitutional right may not also be protected by an analogous branch of common law torts," the federal court is given more leeway generally to apply common law rules to a particular case without strictly following any one of such rules. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 1049–51, 55 L.Ed.2d 252 (1978). As the preceding citation makes apparent, there is still room to maneuver[5] in the area of survivability of § 1983 actions, where, as here, the common law does not explicitly prescribe or proscribe survivability for a cause of action for loss of procedural due process.[6] In *Carey, supra,* under facts very similar to those presented here,[7] the Court

fashioned its own rules for *damages* in a procedural due process case, without adhering to the law of the state in which the action arose. Significantly for the case at bar, the Court in *Carey* did not follow the state defamation doctrine of presumed damages, indicating that procedural due process is not analogous to state defamation and its kindred, libel and slander;[8] specifically, the Supreme Court recognized that procedural due process, unlike defamation, has a nature apart from protection of reputation.

> Petitioners do not deny that a purpose of procedural due process is to convey to the individual a feeling that the government has dealt with him fairly, as well as to minimize the risk of mistaken deprivations of protected interests." 98 S.Ct. at 1051.

Furthermore, in *Carey,* the Court held that the plaintiff could be awarded nominal damages for a deprivation of procedural due process without prevailing on the merits of the substantive claim—(98 S.Ct. at 1054)—a result impossible in the law of defamation where damages do not flow until plaintiff proves a case on the merits.

Under South Carolina law,[9] the general exceptions to survivability are actions for

---

4. No attempt is made by the defendants to suggest that they should recover attorney's fees as "prevailing" defendants, and the court is confident that such a claim could not meet the test of *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), to show that Mrs. Burt's suit was "frivolous, unreasonable or without foundation, even though not brought in subjective bad faith," 98 S.Ct. at 700.

5. The dissenters in *Robertson v. Wegmann, supra,* were much stronger in their feelings, finding that *Robertson* and *Carey v. Piphus, supra,* "cannot easily be squared," 98 S.Ct. at 1998 (Blackmun, J., dissenting).

6. The court notes that while South Carolina protects due process rights by a constitutional provision—(S.C.Cons. Art. 1 § 3)—similar to that contained in the Fourteenth Amendment to the United States Constitution, neither the survivorship statute [§ 15–5–90], which is the focus of this court's attention, nor state decisional law, exempts constitutional causes of

action from the general rule of survivorship in the state.

7. The suspended individuals were students instead of a teacher, but both cases concern procedural due process.

8. The Court of Appeals has also recognized that "a deprivation of procedural due process is an independent constitutional tort, actionable under § 1983 with or without proof of actual injury." *Burt II,* 585 F.2d at 616.

9. South Carolina Code § 15–5–90 (1976) provides:

> "Causes of action for and in respect to any and all injuries and trespasses to and upon real estate and any and all injuries to the person or to personal property shall survive both to and against the personal or real representative, as the case may be, of a deceased person and the legal representative of an insolvent person or a defunct or insolvent corporation, any law or rule to the contrary notwithstanding."

malicious prosecution, for libel and slander, and for fraud and deceit. *Dean v. Shirer,* 547 F.2d 227, 229 (4th Cir. 1976). Clearly, Mrs. Burt's procedural due process cause of action is entirely foreign to all of these except possibly libel and slander (defamation); however, the Supreme Court has recognized that there is no § 1983 action for defamation, *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Because the Supreme Court has recognized in *Carey* the clear propriety of the type of due process action presented here, this court has concluded that a procedural due process action is not co-extensive with a state defamation action; were it co-extensive, it would not have been recognized in *Carey.* *(Paul v. Davis, supra).*

■ Since South Carolina law provides for general survival of all causes of action, including "injuries to the person"—(South Carolina Code § 15–5–90 (1976))—except as specifically exempted by state law, *Dean v. Shirer, supra,* this court has decided that the right to procedural due process, as more than a federalized law of defamation, is an injury to the person which survives to the personal representative.[10] As heretofore noted, one aspect of such injury is the person's right to a "feeling that the government has dealt with him fairly," *Carey,*

*supra,* 98 S.Ct. at 1051, a right which is not linked, as a defamation cause must be, to the public's perception of that particular person. The general rule of survival, rather than the limited exception for libel and slander actions, in this court's opinion, governs the situation here.[11]

This court would be less than candid if it did not state that the cases concerning survivability are not easily reconciled. For instance, South Carolina Code § 15–5–90 provides for general survival of causes of action for "any and all injuries to the person," regardless of the manner in which inflicted. "Injury to the person" can be manifested by either physical or mental suffering and both are subsumed, in this state, under the term "bodily injury." As stated in *Spaugh v. A. C. L. Railroad Co.,* 158 S.C. 25, 155 S.E. 145, 147 (1930):

> "In order to receive bodily injury, it was not necessary that the plaintiff should lose a limb or receive a broken limb, or to have wounds inflicted on her body. Having her nervous system injured and being made sick, in the manner she testified, constitutes bodily injury . . . ." *See also, Padgett v. Colonial Wholesale Distributing Co.,* 232 S.C. 593, 103 S.E.2d 265 (1958).

The Supreme Court, in holding that "injured feelings and humiliation," or vindication of a constitutional right, was a personal injury for the purposes of a statute of limitations, gives support to this court's holding that the injury alleged here is an "injury to the person" and, thus, survivable under the terms of § 15–5–90.

**10.** The United States Supreme Court, when faced with interpretation of a similar phrase, recently expressed the view shared by this court. In *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1977), an action brought under 42 U.S.C. § 1981 for deprivation of the right to attend an all-white school, the Court was faced, as is this court, with looking to state law to fill a void in federal law—(in that case, a statute of limitations). The Court found that the applicable state statute provided a two-year period for commencement of actions "for personal injuries." Plaintiff's contention that the quoted phrase only applied to "actual physical injuries" was rejected by the Court which said:

> ". . . whether the damages claim of the [plaintiff's] be properly characterized as involving 'injured feelings and humiliation' . . . or the vindication of constitutional rights, as the petitioners contend, there is no dispute that the damage was to their persons, not to their realty or personality." 96 S.Ct. at 2600.

**11.** *Louthian & Merritt, P.A. v. Davis,* S.C., 251 S.E.2d 757 (1979) is not to the contrary. In *Louthian,* the court denied fees to the attorneys for a deceased wife who died before her divorce was granted, holding that the right to attorney's fees from the husband as a litigant was contingent on the successful prosecution of the divorce action which, of course, abated upon the wife's death. A divorce action which is brought to dissolve the marital status clearly does not survive the dissolution of that status by natural means. Mr. Burt's cause of action here is, by contrast, one for damages to Mrs. Burt's physical and emotional well being based on her failure to receive a pre-termination hearing, an injury to the person which survives her by the terms of § 15–5–90.

While it would seem that the Legislature meant what it said and intended that actions for "all injuries to the person" should survive, the South Carolina Supreme Court has put a gloss—(or tarnish)—on the statute and, in some cases, has looked not to the *nature* of the injury inflicted—(*i. e.*, to the person)—but rather to the *manner* in which it occurred. For instance, a plaintiff who suffers "bodily injury"—(as defined above)—as a result of an auto-train collision has a survivable cause of action, *Doremus v. Atlantic Coast Line Railroad Company*, 242 S.C. 123, 130 S.E.2d 370 (1963), while a plaintiff suffering "bodily injury" due to a malicious prosecution does not. Both are "injuries to the person"; yet, despite the clear language of § 15–5–90, one survives, the other does not. Perhaps an explanation, though not a justification, may be found in the fact that the admitted exceptions to survivability in South Carolina are themselves "survivors" of the old common law notion that all actions *ex delicto* died with the perpetrator or victim. It has been over sixty years since Mr. Justice Gage recognized:

> "It would be fruitless to discuss what was the rule of the common law in like cases. Modern statutes have preserved rights which the old judges deemed to have died with those who suffered personal wrongs . . . ." *Bultman v. Atlantic Coast Line Railroad Company*, 103 S.C. 512, 88 S.E. 279, 280 (1916).

As herein noted, however, even the modern justices have deemed some rights, apparently preserved by the survival statute, to be nonsurvivable. Under the rubric of rights which are in the nature of "injury to character," or "strictly personal", *see, e. g., Carver v. Morrow*, 213 S.C. 199, 48 S.E.2d 814, (1948)—(slander)—the South Carolina Supreme Court has denied survival to causes of action which are, *literally*, injuries to the person. Why an action for a nervous breakdown caused by the publication of a false story is nonsurvivable, while an action for emotional upset caused by an auto-train collision does survive, is not readily apparent from the language of § 15–5–90 which expressly provides for survivability of "causes of action for . . . all injuries to the person . . . any law or rule to the contrary notwithstanding." Perhaps the clever practitioner in the former situation can entitle his cause of action one for "intentional infliction of emotional distress" rather than one for "slander" and thereby escape the nonsurvivability rule in slander actions. However, when a rule of law can be avoided by mere verbal manipulation, the rule itself manifests a foundational instability. In any event, this court is not required to reconcile these apparent incongruities, but rather it must apply South Carolina survivorship law here when there is no state cause of action coincident with this federal action for deprivation of procedural due process. In such a situation, the court has adopted the approach of the Court of Appeals in *Dean v. Shirer, supra*. In that case, an attorney who had criticized the impartiality of the local municipal court was haled before the municipal judge, where he was berated, threatened, and forced, by verbal abuse, to publicly retract his criticism of the court. Plaintiff sued under 42 U.S.C. § 1983, but died while his case was pending; the defendants asserted that under South Carolina law, an action for slander, based on the judge's words to the plaintiff, did not survive the plaintiff's death. The Court of Appeals noted that the events recounted, while supporting a slander action, would also support an action for false imprisonment or assault. Since no South Carolina case had specifically held that these latter causes of action did not survive, the Court of Appeals held that the § 1983 action, so construed, did survive. In the course of its holding, the court said:

> "We are of opinion false imprisonment and assault are 'injuries to the person' under S.C.Code § 10–209 [15–5–90] and as such do survive. *Brewer* [*Brewer v. Graydon*, 233 S.C. 124, 103 S.E.2d 767 (1958)] cites malicious prosecution, slander and fraud and deceit as the exceptions to the statute and in the absence of a controlling South Carolina decision, no other exception being called to our attention, we give effect to the literal wording

of the statute as we construe it and hold the cause of action survives as it may be equated to assault or false imprisonment." 547 F.2d at 230.

This court is fully in accord with the view of the Court of Appeals that since survivability is made the general rule by § 15–5–90, the exceptions to survivability are narrowly confined to those specifically enumerated by the South Carolina Supreme Court; additionally, this court's distinguished brother on the bench, the Honorable Robert W. Hemphill, has recently held in a § 1983 action:

> "The Code of Laws of South Carolina provides for the survival of an action to recover for injuries to the decedent while he was alive [citing § 15–5–90]. The *only exceptions* to the survival of causes of action are malicious prosecution. *Brown v. Bailey,* 215 S.C. 175, 54 S.E.2d 769 (1949); libel and slander, *Carver v. Morrow,* 213 S.C. 199, 48 S.E.2d 814 (1948); and fraud and deceit, *Mattison v. Palmetto State Life Insurance Co.,* 197 S.C. 256, 15 S.E.2d 117 (1941). *As plaintiff's claim does not come within one of the exceptions* and she is a proper party as Administratrix to pursue this claim, defendant's Motion to dismiss is denied upon this ground." *Belcher v. South Carolina Board of Corrections,* 460 F.Supp. 805, 807–808 (D.S.C.1978). (emphasis added)

Since Mrs. Burt's cause of action, like that of the plaintiffs in *Belcher v. South Carolina Board of Corrections, supra,* and *Dean v. Shirer, supra,* does not come within the three general exceptions for survivability in South Carolina, this court feels that the cause of action here also survives.

Even were this court to conclude that a cause of action for deprivation of procedural due process did not survive, in the context of this particular action, such a decision would not avail the defendants. As noted previously, Mrs. Burt died three weeks after the *Burt I* mandate, which had limited her cause of action to one for procedural due process, was issued. Therefore, by September 1, 1975, forty (40) months before the instant motion was filed, the defendants could have raised its survivorship claim. It has been the law in this Circuit, at least from the time of *Scott v. Vandiver,* 476 F.2d 238, 242 (4th Cir. 1973), that state law governed the survival of § 1983 causes of action; any doubt as to that principle was laid to rest in *Dean v. Shirer, supra,* twenty-eight (28) months before the instant motion was filed.

█ The defendants had ample opportunity to raise the survivability issue after Mrs. Burt's death on or about September 1, 1975, which was several months prior to this court's remand hearing in this case on January 14, 1976, and many months prior to the second appeal herein.[12] This court does not feel that a party should be provided seriatim appeals, raising on appeal first one issue and then another, until it finds an issue upon which it can prevail, or, as is more likely, until it consumes the judicial resources of the party opponent. While the doctrines of *res judicata* and "law of the case" (*see, Lytle v. Commissioners of Election of Union County,* 541 F.2d 421, 425 (4th Cir. 1976)), are useful tools in normal adjudications, these legal principles are especially applicable in this protracted case which has consumed gargantuan portions of judicial time at both the trial and appellate levels. At the January 14, 1976, hearing after remand from the *Burt I* panel, this court raised the issue of survivorship of the cause of action, and the parties agreed that such a cause of action would survive to Mrs. Burt's personal representative. That agreement was not challenged on appeal in *Burt II* and, thus, it has become, in this court's opinion, the law of this case (*Lytle, supra*).[13] All that remained for this court

---

12. In fact, at the January 14, 1976, hearing, the defendants' attorney stated that after doing "considerable research" he was convinced that "there was a survival here." This statement was made when the procedural due process question was the only issue left in the case as this court had held more than a year earlier that Mrs. Burt's termination was justified, and this finding was affirmed in *Burt I.*

13. The court notes that in *Capital Investors v. Executors of the Estate of Morrison,* 584 F.2d 652 (4th Cir. 1978), a case before the Court of

to decide after the *Burt II* remand[14] was the amount of damages and plaintiff's entitlement to attorney's fees. This court feels that the question of survivability of the cause of action was foreclosed by the agreement at the district court level and the fact that such agreement was not challenged in the *Burt II* appeal.[15]

Since it is appropriate to look to state law for survivorship provisions in § 1983 suits, the court mentions South Carolina Code § 15–5–180 (1976) as a third ground for upholding survivorship in this case; that section provides in pertinent part:

> "After a verdict shall be rendered in any action for a wrong such action shall not abate by the death of any party, but the case shall proceed thereafter in the same manner as in cases where the cause of action now survives by law."

While this court has been unable to find any authoritative interpretation of this portion of the statute by the South Carolina Supreme Court, the statute on its face provides for survival here. This court, sitting as trier of fact, rendered a judgment for Mrs. Burt on the procedural due process issue. The Court of Appeals in *Burt I* left this finding undisturbed but remanded on other issues.[16] The original judgment of this court on the procedural due process liability issue remains—(after two appeals)—the same as it was in 1975. South Carolina Code § 15–5–180 (1976) expresses the sound public policy of the state of South Carolina that the death of a party after a verdict should not provide a windfall to the opposition when the deceased took timely action to protect his rights by litigating a claim to a verdict before his death. That policy is equally applicable here and should support the court's interpretation of § 15–5–180.

Finding that the cause of action herein survived the death of Mrs. Burt, for the reasons heretofore discussed, it is

ORDERED, that the defendants' motion to dismiss the within action be, and the same hereby is, denied.

IT IS FURTHER ORDERED, that a hearing be held in this action at the United States Courthouse, Charleston, South Carolina, on April 25, 1979, at 11:00 o'clock A.M. to determine the fees to be awarded plaintiff's counsel.

AND IT IS SO ORDERED.

---

Appeals for the *fifth* time, the court approved the doctrine of "law of the case" even where *res judicata* would not have barred a person, not a party at the time of the salient decision, from relitigating the issue. In that case, the Appeals panel reversed the district judge and ordered him to adhere to his earlier ruling which was present in the case when it was earlier appealed and affirmed. In the course of its discussion, the court remarked that the doctrine of "law of the case," while not "inflexible," was proper unless departure was necessary to "correct earlier error, if it becomes apparent, and to avoid injustice," 584 F.2d at 654. For the reasons heretofore explained, the court does not believe that error was committed in its earlier survivorship ruling, and, certainly, defendants are in no position to complain about injustice.

**14.** See footnote 16, *infra*.

**15.** The statement by the Court of Appeals that plaintiff was entitled to attorney's fees if "he continues to prevail on the merits," 585 F.2d 617, was obviously intended to provide for yet another intervening change in decisional or statutory law; such statement does not indicate to this court that the defendants can now raise defenses, available for more than three years, to prevent plaintiff from prevailing herein.

**16.** The Appeals panel's guidance concerning empanelling a jury if the action should proceed at law was mooted by plaintiff's election to proceed in equity. *See, Burt v. Abel,* 585 F.2d 613, 615 (4th Cir. 1978); likewise, plaintiff's present election to accept nominal damages avoids empanelling a jury to decide the *Carey v. Piphus* issues. *See, Burt II,* 585 F.2d at 616, n. 7.